UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| CAMA DIANE KLENE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:08-cv-488-SEB-WGH |
| | ) | |
| TRUSTEES OF INDIANA UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Defendant's Motion for Summary Judgment,
Vacating Final Pretrial Conference and Jury Trial,
and Issuing Final Judgment**

**I. Background**

For the reasons explained in this Entry, the defendant's motion for summary judgment (dkt 69) must be **granted.**

The plaintiff, Cama Klene ("Klene") alleges that the defendant Trustees of Indiana University ("IU") discriminated against her on the basis of disability when it dismissed her from the Bachelor of Social Work ("BSW") program. Klene further alleges that IU retaliated against her by changing her grade after she filed a complaint with Affirmative Action. She alleges that in both instances IU violated her rights pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S. C. § 12132.

**II. Discussion**

**A.    Summary Judgment Standard**

"As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted). Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **FED.R.CIV.P.** Rule 56(c). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney,* 526 F.3d at 1104 (internal citations omitted). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Id.* (quotation omitted).

Because Klene is proceeding without counsel, the notice required by *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982), and by Local Rule 56.1 was issued. Through this notice, Klene was notified of the nature of the IU's motion, of the proper manner in which to respond and of the consequences of failing to respond. She has responded with a supporting brief and other materials.

### B. Undisputed Facts

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(e), the following facts are undisputed for purposes of the defendant's motion for summary judgment:

*The Required S381 Junior Year Practicum Course*

Students enrolled in the BSW program at IU's School of Social Work (the "School") in Indianapolis are required to complete a junior year practicum course called Social Work Practicum I, also known as course S381. Course S381, which is to be completed in the spring semester of a student's junior year, has two major components: (1) a bi-weekly lecture; and (2) a field practicum internship placement at a social work agency. The practicum placement component is to run from early January to the beginning of May. The syllabus for the course provides a list of 18 course objectives that must be satisfied to complete the course successfully.

The course syllabus for S381 notes that, in accordance with School policy, students must earn at least a C grade to pass the course. The School's Student Handbook also explains the School's policy that students must receive at least a C grade or better in all social work classes in order to continue in the BSW program. The School has a BSW Field Manual, which notes that a grade of C- or below in S381 will result in automatic discontinuation of a student in the BSW program. In fulfilling the practicum, BSW students are also required to adhere to the National Association of Social Work Code of Ethics.

*Mandatory BSW Orientation Session and Required Practicum Placement Forms*

In July 2005, Klene submitted an application for admission to the School's BSW program. Klene received notice that she had been admitted to the School's BSW program through a letter dated July 29, 2005, from Professor Irene Queiro-Tajalli, who was the School's Executive Director for Undergraduate Education. The letter informed Klene of a mandatory orientation session for all BSW students on August 3, 2005, and stated that "[a]ll students are required to attend this important meeting." Klene did not attend the mandatory orientation meeting.

One of the topics discussed with students at the mandatory orientation meeting was the required S381 practicum. Among other things, students were told at the meeting that they had mailboxes at the School they were responsible to monitor for information regarding this and other School matters. Because Klene did not attend the mandatory orientation, she was unaware that she had a School mailbox until December 2005.

All new students were also automatically enrolled in the School's listserv, and students were advised to check listserv messages for important School information, including information about field placements. Students were notified of a mandatory S381 Spring 2006 Junior Information Session to be held on September 27, 2005, by listserv notification on September 16, 2005. Klene did not attend the information session.

Klene, who was diagnosed with multiple sclerosis ("MS") in 1987, has been in a wheelchair since 1996. During the 2005-2006 school year, however, she was able to drive and was not under any specific medical restrictions issued by any doctor.

Students were responsible to submit forms listing the student's preferred practicum locations for S381 to BSW School Field Coordinator Erika Galyean ("Galyean") at the School no later than October 15, 2005, so that she could coordinate practicum placements with the agencies. Students were notified of this both through the mandatory S381 orientation session, and by having the forms and instructions sent to their School mailboxes if they did not attend that session. Klene's friends kept telling her to check her mailbox for information regarding the S381 practicum placement process, but Klene erroneously assumed they meant her home mailbox. Klene kept checking her mailbox at home, but when she found nothing there about the practicum she never asked anyone why she had not received the information her friends were discussing. Having missed the mandatory orientation, and having not checked her School mailbox, Klene failed to turn in the practicum preference form by the October 15 deadline.

Of the 51 junior students in the BSW program during the 2005-2006 school year, Klene was the last student of her class to engage in the field placement process due to her failure to attend orientation sessions, communicate with the field coordinator timely, and submit her placement preference forms in a timely manner. A final pre-S381 orientation meeting was held on December 13, 2005. Klene did attend this meeting, and immediately thereafter went to her School mailbox and found the forms. Klene still did not turn in the

forms, and Galyean later had to contact Klene to remind her that she needed to do so. Klene never did complete the forms, so Galyean allowed her to provide practicum preference information over the phone on December 22 rather than completing and submitting the forms. Klene did not submit her cover letter and resume that were supposed to be part of the packet submitted in October until December 29, 2005.

*Johnson County Community Corrections Practicum Did Not Materialize*

Although Klene's ability to find a practicum was greatly hampered by her tardiness of over two months in providing the needed information, resume and cover letter, Klene told Galyean that she thought she had a practicum placement already lined up with Johnson County Community Corrections. Klene based this on a single conversation she had with Laurie Meyers at that agency in October 2005, in which Klene mentioned she might like to do her practicum at that agency, but did not go into any detail. After that brief initial discussion in October 2005, Klene had no further contact with Ms. Meyers before speaking with Galyean in late December. Klene assumed that finding a practicum was something she would wait to do in January. When Galyean contacted her, Ms. Meyers was non-committal and expressed reservations about whether a practicum would work at the agency, but she indicated willingness to review information on what a practicum would entail and to speak with Klene. Galyean e-mailed the information to Ms. Meyers on December 22.

Galyean communicated with Ms. Meyers by e-mail in early January 2006, at which time Ms. Meyers was still unsure as to whether the practicum placement would work. After further communications, Klene agreed that it would not work to have a practicum at Johnson County Community Corrections and that a placement there should not be tried.

*Noble of Indiana Declined a Practicum Placement for Klene*

Galyean then contacted another agency, Noble of Indiana, and forwarded Klene's resume to it for consideration for a practicum placement. Klene interviewed with Noble on January 16, 2006. Noble notified Galyean that it was declining a practicum placement for Klene, citing inappropriate and excessive self-disclosure by Klene and its perception that Klene did not seem interested in working with Noble's clientele.

*Klene's Practicum At Kids' Voice Of Indiana*

The same day Galyean received notice that Noble had declined Klene a practicum, Galyean contacted a number of other agencies to see if they might have a practicum opening for Klene. On January 26, 2006, Kids' Voice of Indiana expressed possible interest in having Klene as an intern. Klene called Eddie Rivers at Kids' Voice and scheduled an interview for February 15, 2006. Klene told IU that she "got the practicum" at Kids' Voice the same day and that she would be helping with the fundraising department. After further communicating with IU, however, Mr. Rivers learned that fundraising would not meet the required course objectives for S381. Kids' Voice terminated the practicum on March 3, 2006, citing concern that Klene would be unable to prevent a non-custodial parent from

absconding with a child (something that had actually happened at the agency before) during a supervised visitation and that Kids' Voice's limited staffing would not allow a second staff member to regularly be present to address this issue. Klene agreed that she would not have been able to prevent a non-custodial parent from absconding with a child.

*Klene's Practicum at Wildwood Nursing Home*

With the semester half over and Klene without a practicum placement, Galyean attempted to locate yet another practicum location and was able to arrange for a placement at Wildwood Nursing Home. Dr. Queiro-Tajalli met with Klene on March 28, 2006, to make sure that Klene understood the School's expectations regarding her practicum at Wildwood, which were documented in a memo on April 3, 2006. Although S381 practicum placements were supposed to end by May 1, 2006, there was insufficient time for Klene to complete the required 240 hours. IU agreed to allow Klene's practicum to continue into the summer. Initially, Klene thought Wildwood, where her practicum began on April 4, 2006, was a very good placement for her. But within a few weeks Wildwood terminated Klene's practicum, citing to IU that Klene had engaged in professional boundary violations, exhibited lack of initiative, dependency, and cognitive performance deficiencies.

*Klene's Practicum at Reach for Youth*

At this point, Klene had been involuntarily terminated from two practicum placements—at Kids' Voice and at Wildwood—by the agencies. Prior to Klene, the School had never permitted any student to have more than two failed practicum placements in S381. Nevertheless, the School allowed her to attempt one final practicum over the summer at Reach for Youth. Before this final practicum began, the School convened a meeting to discuss practicum concerns and barriers experienced to that point and to generate alternative strategies to help Klene succeed at the S381 practicum requirement. The meeting was attended by Klene, Dr. Queiro-Tajalli, Galyean, Charlie Johnson (the Director of the Nina Scholars program in which Klene participated), the S381 instructor Elsa Iverson, Michael Hudson from IU's Adaptive Education Services, and the BSW Field Secretary Susan Corrie who took the meeting notes to generate a summary memo. The memo from the meeting reflects a summary of accommodations that had already been provided to Klene, including not dismissing her from S381 when she did not have a permanent practicum placement, being allowed to complete assignments in another course she was taking contemporaneously that were supposed to be based on her practicum activities although none were ongoing, allowing Klene to submit tardy practicum placement information, and permitting Klene multiple interviews and practicum placements.

Although Klene said that she felt "ready" to start a practicum at Reach for Youth immediately, the group agreed that she should first complete a functional capacity evaluation ("FCE") to identify any additional accommodations that might maximize Klene's chances of success. Klene completed the FCE on May 16, 2006. The FCE report concluded that Klene "could be independent with an electric wheelchair" and recommended that Klene look into acquiring an electric wheelchair. Klene, however, rejected the option

of acquiring an electric wheelchair because she did not want to risk having her arms become weaker. Klene expressed concern about getting her wheelchair in and out of her car, so it was agreed that the State of Indiana's Vocational Rehabilitation Services would provide and pay for a taxi service to take Klene to and from Reach for Youth and that the driver would be paid to load and unload her wheelchair for her. Klene also requested permission to use her voice recognition software for taking notes during her practicum. She was granted permission to do so.

During her placement at Reach for Youth, the agency did not want Klene to have other staff members or clients at the facility push her wheelchair for her. Both Reach for Youth and IU felt that Klene asking or allowing staff or clients to push her wheelchair for her would be a professional boundary violation of the NASW Code of Ethics, which prohibits social workers from using professional relationships and client relationships for personal advantage. Nevertheless, during her practicum placement at Reach for Youth Klene allowed staff and clients to push her wheelchair, in violation of these instructions.

After Klene had been at the practicum placement at Reach for Youth for several weeks, that agency's Intern Coordinator, Kyle Myers, terminated Klene's practicum on August 21, 2006, citing her violation on the prohibition of having staff and clients push her wheelchair for her, as well as poor attendance.

*Klene Received an "F" Grade in S381 and was Dismissed From the BSW Program*

At this point, nearly four months after her practicum placement was to have been completed under the S381 syllabus, Klene had failed three practicum placements. As a result, the S381 course instructor notified Klene in writing by e-mail on August 21, 2006, that she had received a grade of "F" in S381. Klene also received notice in writing by e-mail from Dr. Queiro-Tajalli on August 24, 2006, that as a result of her failed placement Klene was required to withdraw from any senior level social work courses. Klene knew at that time that as a result of the School's policy, because she had received a grade below a C in a social work course, she was out of the BSW program. A formal follow up letter of dismissal was sent on November 20, 2006. In April 2007, Klene filed a complaint against IU with the Office of Civil Rights for the Department of Education.

### C.     Statutory Overview

As noted, Klene alleges in her amended complaint that IU failed to accommodate her with respect to fulfillment of the S381 practicum requirement, in violation of Section 504 of the Rehabilitation Act of 1973 and Title II of the ADA. For issues relevant to this case, the analysis for claims under Section 504 and Title II of the ADA are the same. *See Miller ex rel. S.M. v. Board of Educ. of Albuquerque Public School,* 565 F.3d 1232, 1245 (10th Cir. 2009) (Section 504 of of Rehabilitation Act and Title II of the ADA involve the same substantive standards); *Wong v. Regents of University of California*, 410 F.3d 1052, 1055 n.1 (9th Cir. 2005) (Title II of the ADA and Section 504 of Rehabilitation Act create the same rights and obligations).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Section 504 "imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Southeastern Community College v. Davis*, 442 U.S.397, 413 (1979). *See also Mershon v. St. Louis University*, 442 F.3d 1069, 1076 (8th Cir. 2006) ("An educational institution is not required by the Rehabilitation Act or the ADA to lower its academic standards for a professional degree."). An entity need not be required to make "fundamental" or "substantial" modifications to accommodate disabled individuals, only "reasonable" ones. *Alexander v. Choate,* 469 U.S. 287, 300 (1985). "Accommodation is not reasonable if it either imposes undue financial and administrative burdens on a grantee or requires a fundamental alteration in the nature of the program." *School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 288 n. 17 (1987) (internal quotations omitted). "[C]ourts give due deference to the judgment of education officials" on matters of accommodation. *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st. Cir. 2006).

Klene also alleges that IU retaliated against her for having filed a civil rights claim. Section 504 and ADA prohibit discrimination against any individual who has opposed an unlawful act of discrimination, made a charge of discrimination, or participated in any manner in an investigation or proceeding under either statute. *See Mershon*, 442 F.3d 1069 at 1074; 42 U.S.C. § 12203(a). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate (1) that she engaged in a statutorily protected activity, (2) that an adverse action was taken against her, and (3) that a causal connection existed between the adverse action and the protected activity. *Mershon*, 442 F.3d at 1074.

**D.     Analysis**

With respect to Klene's failure to accommodate claim, the threshold issue is whether Klene is a qualified individual with a disability, *i.e.*, whether Klene met the essential eligibility requirements of the BSW program with or without reasonable modifications to rules, policies or practices. . . . The essential eligibility requirement in this case is the completion of the field practicum portion of course S381. Klene did not complete the course, and she argues that IU should have provided more accommodations than it did.

The undisputed record shows that IU provided several accommodations to Klene. IU allowed Klene to remain in the BSW program when she failed to timely submit practicum preference forms and arrange for a practicum placement for the Spring 2006 semester. IU allowed Klene to turn in information over the phone over two months late. IU allowed her to continue her attempt to complete the practicum past the May 1 conclusion date. IU

7

allowed her to try a third practicum placement at Reach for Youth after having been involuntarily dismissed from placements at two other agencies, despite having never allowed any other student more than two terminated practicum placements. IU provided a FCE for Klene to assist in recommending other possible accommodations. The FCE recommended that Klene obtain an electric wheelchair to make her functionally independent (which Klene rejected). IU facilitated a paid taxi service through the State of Indiana's Vocational Rehabilitation Services to transport Klene to and from the practicum site at Reach for Youth and to unload and load her wheelchair. IU also allowed Klene to use her voice recognition software for taking notes at Reach for Youth.

In sum, IU gave Klene numerous extensions of time to complete required tasks. IU allowed Klene to extend the course that was supposed to be completed in May, into the summer, in an attempt to facilitate her ability to complete the course. Also, after Klene had failed two placements, although it had never done so before, IU allowed Klene to attempt yet a third practicum. That third agency terminated Klene's practicum on August 21, 2006. By that point, time had run out.

Klene contends that IU should have done more.[1] Specifically, she argues that IU should have accepted her "Great Idea" for a placement. In her amended complaint, Klene alleges that after she was terminated from the Kids' Voice agency, she proposed her own plan for a practicum, an idea she refers to as her "Great Idea." She wanted to stay under the supervision of Kids' Voice but also work from home and attend various group meetings, such as AA, to meet her objectives. She thought she could attend two or three meetings a day, talk with people there, and write about it. She emailed her Great Idea to Galyean on March 6, 2006. Galyean rejected Klene's idea. Klene has not presented any evidence that shows that her Great Idea would have fulfilled all of the course objectives and requirements. As noted above, neither Section 504 nor Title II of the ADA require a university to lower the standards of the BSW practicum program to accommodate a disabled student. Indeed, Klene does not explain how Kids' Voice staff could supervise her while she attended meetings unrelated to and outside of the Kids' Voice office.

Klene asserts that if IU had allowed her to create her own practicum, she could have completed the course in a timely manner. Klene argues that IU did not consider the possibility of letting her proceed with her Great Idea. Klene fails to acknowledge the

---

[1]One argument presented by Klene is that IU should have dismissed her from its program in October 2005 or told her to wait a year because she failed to attend required meetings and turn in paperwork. Had IU done so and if Klene's failure to attend meetings was caused by her disability, the court could have easily found that IU failed to provide reasonable accommodations. The January 2006 semester had not yet begun, and it was not too late to attempt to catch up. Klene's proposition is nonsensical, given that the basis of her lawsuit is that IU should have done more to allow her to pass the course. To dismiss Klene from the program at such an early time or make Klene wait a year to continue the program hardly complies with the spirit and requirements of Section 504 and the ADA. The fact that IU did not prematurely dismiss Klene is to IU's credit, not a basis for finding liability.

8

rationale that Galyean provided for not accepting the proposal, the fact that Kids' Voice could not accommodate her needs in the office and would only have allowed Klene to do fundraising telephone work from home, a task that would not fulfill the 18 course objectives applied to all placements.

Klene further argues that IU should never have assigned her to Kids' Voice in the first place because the placement did not accommodate her needs. She could not be left alone with a client for fear that an angry parent would overtake her and leave with their child. There is no evidence that IU presented Klene with practicum options with anything but the expectation of success. Neither of Klene's contradictory premises - - that IU should not have placed her at Kids' Voice but should have allowed Kids' Voice to continue to supervise her while she performed work unrelated to that agency - - are persuasive. Even if IU had not charged the practicum at Kids' Voice "against her," the fact remains that Klene's time and available options had been exhausted.

Using hindsight to evaluate the viability of a practicum is not a basis on which to evaluate whether IU made reasonable accommodations in this case. Moreover, it remains undisputed that Klene began the process of finding a suitable practicum late, due to no fault of IU, and even allowing her to extend her attempts to complete the program through the summer did not result in her finishing the course. Klene believed at first that the final attempt, at Wildwood, would be a good placement for her. Ultimately, however, after a few weeks, Wildwood terminated Klene's internship for reasons of performance deficiencies and professional boundary issues. By the end of the summer, although IU had made several attempts at finding a viable placement, Klene failed to complete the requirements of the course. To permit Klene to continue in the BSW program without completing the practicum portion of course S381 would significantly lower the standards for the program. IU was not required to make such a substantial modification in Klene's requirements for graduation.

Despite the reasonable accommodations provided by IU, Klene was unable to timely complete the minimum requirements of the BSW program. Therefore, Klene is not an otherwise "qualified individual with a disability." *See McGregor v. Louisiana State University,* 3 F.3d 850, 858-60 (5th Cir. 1993) (to permit a student to attend law school part-time and take final examinations at home would force the school to lower its academic standards, would sacrifice the integrity of the program, and would not be "reasonable" accommodations). Accordingly, for all of the reasons discussed above, IU is entitled to summary judgment on Klene's failure to accommodate claim.

As to her claim of retaliation, Klene alleges that she was given an "F" in S381 because of her internal complaint to the IU Office of Affirmative Action ("OAA") alleging failure to accommodate. In support of this claim, Klene argues that her grade for S381 was changed from a B- to an F *after* she contacted the OAA in April 2007.

Klene has satisfied the first two elements of a retaliation claim. She engaged in a statutorily protected activity and an adverse action was taken against her when she was

dismissed from the BSW program. Klene has failed to present evidence, however, that a causal connection existed between the adverse action and the protected activity. Of greatest significance, Klene has presented no admissible evidence reflecting that she was ever given a B- for the course. Rather, the undisputed record demonstrates that Klene was given an "F" because she failed to complete the practicum portion of the program. Moreover, it is undisputed that she was notified of the "F" in August 2006. She further admits in her brief that she knew she had been dismissed from the BSW program, at the very latest, in December 2006, long before she filed any complaint. Klene's theory that IU changed her grade as a result of her filing a civil rights complaint is baseless. Klene's retaliation claim, therefore, fails and IU is entitled to summary judgment on that claim as well.

### III. Conclusion

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala,* 124 F.3d 298, 305-06 (1st Cir. 1997) (internal quotation omitted). As the non-movant, Klene bears the burden of coming forward with specific facts from the record which show a genuine issue of material fact. *Morfin v. City of E. Chi.,* 349 F.3d 989, 997 (7th Cir. 2003). As explained herein, Klene has not come forward with evidence that establishes a *prima facie* case as to either of her claims. Accordingly, the IU's motion for summary judgment (dkt 69) must be **granted.** Any other pending motions are **denied as moot**.

Judgment consistent with this Entry shall now issue. The costs of this action are assessed against the plaintiff.

The final pretrial conference and jury trial set for August 25, 2010, and September 1, 2010, respectively, are **vacated.**

**IT IS SO ORDERED.**

Date: 07/23/2010

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana